# IN THE COURT OF APPEALS OF IOWA

No. 21-0258
Filed January 12, 2022


**WEST DES MOINES HOTEL ASSOCIATES, LLC,**
    Plaintiff-Appellant,

**vs.**

**DALLAS COUNTY BOARD OF REVIEW,**
    Defendant-Appellee.
_____


Appeal from the Iowa District Court for Dallas County, Michael Jacobsen, Judge.


West Des Moines Hotel Associates, LLC challenges the Dallas County Board of Review's 2019 assessment of its West Des Moines hotel property. **AFFIRMED.**


Sarah K. Franklin and Deborah M. Tharnish of Dentons Davis Brown PC, Des Moines, for appellant.

John E. Lande and William R. Stiles of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee.


Heard by Greer, P.J., Badding, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**CARR, Senior Judge.**

West Des Moines Hotel Associates, LLC ("Associates") challenges the Dallas County Board of Review's approval of the 2019 assessment of the West Des Moines Marriott ("Hotel"). The district court affirmed. On appeal, Associates contends the court erred in determining the Board met its burden to prove the property was not over assessed, highlighting the 2017 sale price and declining performance of the Hotel. Associates also asserts the court should not have credited the local board of review's appraiser, claiming he wrongly relied on national market data and improperly calculated the value of or misclassified recent improvements to the property.

Having considered the record evidence, testimony of the witnesses, and the respective drawbacks of each appraisal, we conclude the Board has met its burden to prove its valuation of the Hotel as of January 1, 2019, for $18,434,100 is not excessive. We affirm.

**I. Background Facts and Proceedings.**

This case is a property tax appeal of the county assessor's 2019 $18,434,100 valuation of the Hotel. Associates filed a timely protest with the Dallas County Board of Review ("Board"), claiming the valuation was excessive and asserting the market value was $15,000,000. The Board denied the protest. Associates appealed to the district court.

In the district court, Associates maintained the correct value of the property for the 2019 assessment year is $13,870,000. The Hotel was originally constructed in 1974 and is located at 1250 Jordan Creek Parkway, West Des Moines, Iowa. It is a full-service hotel and convention center, with conference and

banquet facilities, a restaurant, lounge, and an indoor pool. The Hotel is nine stories' tall, has 219 guestrooms, and has a gross building area of 160,096 square feet.

In July 2017, Associates, of which Kinseth Hospitality is the majority owner, purchased the property for $19,000,000, with an immediate return to Associates of $1.25 million labeled on the closing statement as "transferred FF&E cash"—FF&E meaning furniture, fixtures, and equipment. The sale was an arms' length transaction between a sophisticated buyer and seller. The purchase price included the land, hotel, other improvements, personal property, licenses and permits, and all FF&E. The warranty deed declares a $17,750,000 purchase price and FF&E of $3,840,000 categorized as personal property.

The Hotel is a Marriott franchised property. With its purchase, Associates paid $150,000 to secure transfer of a Marriott franchise agreement that calls for an $11 million property improvement plan (PIP) for ongoing maintenance, required replacement of FF&E items, and refreshment of Hotel décor. The PIP anticipated a twenty-four month completion date. Between the purchase date and the January 1, 2019 valuation date, Associates spent approximately $2.1 million on property improvements and an additional $300,000 on deferred maintenance items related to air pressure issues and other site improvements.

Don Vaske of Frandson & Associates, L.C., is a certified general real property appraiser. Associates employed Vaske to appraise the Hotel for its appeal of the 2019 tax assessment. Vaske employed three approaches to assess the value of the property—the sales-comparison approach, cost approach, and income approach. Under the sales-comparison approach, Vaske determined the

market value of the Hotel as a going concern was $17,739,000; under the cost approach, the value was $17,720,000; and under the income approach, the value was $16,400,000. He then made adjustments and allowances and arrived at final appraised value for the Hotel of $13,870,000.

Mark Kenney of American Valuation Group, Inc., is a certified general real property appraiser employed by the Board for this appeal.[1] Kenney employed the sales-comparison and income approaches to assess the value of the property. He determined the cost approach was not applicable. Kenney determined the market value of the Hotel under the comparison-sales approach was $20,800,000 and under the income approach the value was $21,400,000. After reconciliation, Kenney arrived at an appraised value for the Hotel of $21,100,000.

Bruce Kinseth of Kinseth Hospitality testified about the negotiations of the purchase and ongoing operation of the Hotel. Kinseth testified a franchise adds value to any hotel and "when you can affiliate with a Marriott . . . one of the top-tier brands, it adds tremendous economic value. You get the business from Marriott. Marriott Rewards Members are a humungous traveling public, as well as they pay higher rates than your run-of-the-mill driver down the interstate." Kinseth testified

---

[1] Vaske also conducted the appraisal of the Hotel for Associates' 2018 appeal and Kennedy conducted the Board's appraisal.

The 2018 appeal involved the tax appeal relating to the 2017 revaluation of the Hotel at an assessment of $17,956,710. Issues included the recent sale of the subject property, sufficiency of comparable sales, derivation of FF&E value, appropriate overall capitalization rate selection, impact of the PIP, and absence or existence of intangible asset value. On January 28, 2019, the Property Assessment Appeal Board issued a decision ruling that the assessment was affirmed. Associates did not further appeal, though it was notified it could do so.

Associates felt "good about the price that we got" at the time of the purchase but "clearly we overpaid."

Kinseth testified Hotel performance after the purchase "went down"; "our occupancy and average daily rate went down and our overall revenue went down about five percent per occupied hotel room." Kinseth observed the revenue per available room is the "real driving number" in Smith Travel Research Reports—the STAR report—which is relied upon in the hotel industry for "any market-based decision." He stated he had "never seen an appraisal done that doesn't have the most recent STAR report." He criticized Kenney's appraisal for not including the STAR Report information about the Hotel's local competitors. Kinseth disagreed with Kenney's appraisal value and, though the original protest stated the true value was $15 million, he agreed with Vaske's $13,870,000 appraisal for the Hotel's real property.

The district court concluded the Board had proved the assessment was not excessive. The court explained:

> In 2017 [Associates] obtained a mortgage against the [Hotel] from West Bank in the amount of $26,000,000. West Bank obtained an appraisal from certified appraiser Ranney Ramsey [of Nelsen Appraisal Associates, Inc.] Ramsey concluded that the [Hotel]'s value was $18,340,000 as a going concern. Ramsey also projected that the [Hotel]'s market value at completion of [PIP] construction, as a going concern, would be $30,845,000 in September of 2019. Ramsey's valuation of the [Hotel] is consistent with the assessed valuation and Mr. Kenney's final valuation of $21,100,000. As [the Board] has pointed out West Bank had no reason to overvalue the [Hotel], because the property secures West Bank's lending.

The court also rejected Associates' claim that any value of the Marriott franchise should be excluded. The court observed the franchise was one of the reasons Associates was interested in purchasing the Hotel as a going concern.

The court concluded:

> Mr. Kenney's valuation of the [Hotel] is more persuasive and consistent with the offered evidence at trial. Mr. Kenney's assigned value for the FF&E is supported by his testimony and the prior appraisal by Ramsey. Mr. Kenney properly considered the fact that the [Hotel] is a Marriott Franchise which is its present use as a commercial hotel property. Finally, Mr. Kenney's comparable sales approach used appropriate recent sales, within the area of the [Hotel], adjusted to the size of the [Hotel]. Taking all of Mr. Kenney's valuation calculations along with adjustments, allowances and applied capitalization rate his final value of the property is more persuasive and consistent with the evidence offered at trial. In fact, Mr. Kenney's expressed value of the [Hotel] for tax year 2019 is actually higher than the assessment. Defendant Board of Review met its burden of proof to uphold the valuation for assessed value ($18,434,100) of the property for tax year 2019. The assessment must therefore be affirmed.

Associates appeals.

## II. Scope and Standard of Review.

Our standard of review is de novo. *See Compiano v. Bd. of Rev.*, 771 N.W.2d 392, 395 (Iowa 2009). We give weight to the district court's fact-findings, especially with regard to witness credibility, but are not bound by them. *Soifer v. Floyd Cnty. Bd. of Rev.*, 759 N.W.2d 775, 782 (Iowa 2009).

## III. Discussion.

As an initial observation, our supreme court has recognized: "The valuation of property has never been an exact science. In colonial times valuing property was known as the 'rule of common estimation.' Although valuation for tax purposes is necessarily expressed in quantitative terms, the appraisal process has never been and is not now a mathematical exercise." *Wellmark, Inc. v. Polk Cnty. Bd. of Rev.*, 875 N.W.2d 667, 672 (Iowa 2016) (internal citation omitted).

*A. General Principles Applicable to Assessment Proceedings.* All non-exempt real property is subject to taxation. *See* Iowa Code § 427A.1(1) (2019). Pursuant section 427A.1(c), for property taxation purposes, the following are be taxed as real property: "Buildings, structures, or improvements, any of which are constructed on or in the land, attached to the land, or placed upon a foundation whether or not attached to the foundation." Also, "[b]uildings, structures, equipment, machinery, or improvements, any of which are attached to the buildings, structures, or improvements." *Id.* § 427A(1)(d). For purposes of this statutory provision, "attached" means any of the following: "[c]onnected by an adhesive preparation," "[c]onnected in a manner so that disconnecting requires the removal of one or more fastening devices, other than electric plugs," or "[c]onnected in a manner so that removal requires substantial modification or alteration of the property removed or the property from which it is removed." *Id.* § 427A.1(2). However, "property is not 'attached' if it is a kind of property which would ordinarily be removed when the owner of the property moves to another location." *Id.* § 427A.3. Black's Law Dictionary defines the term "fixture" as "an article in the nature of personal property which has been so annexed to the realty that it is regarded part of the land." Thus, unless otherwise exempt, fixtures are taxed as real property. *See, e.g.*, *Stateline Coop. v Iowa Prop. Assessment Appeal Bd.*, 958 N.W.2d 807, 813–16 (Iowa 2021) (discussing exemption under section 427A.1(e), "machinery used in manufacturing establishment").

For taxation purposes, property is assessed at its "actual value," meaning "the fair and reasonable market value." Iowa Code § 441.21(1)(a), (b). "Market value" means "the fair and reasonable exchange in the year in which the property

is listed and valued between a willing buyer and a willing seller." *Id.* § 441.20(1)(b)(1). "Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value." If assessors cannot readily establish the value of the property by this method, they

> may determine the value of the property using the other uniform and recognized appraisal methods including its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.

*Id.* § 441.21(2).[2]

The burden is on the taxpayer to prove one of the statutory grounds for protest by a preponderance of the evidence. *See id.* § 441.21(3)(b)(2) ("For assessment years beginning on or after January 1, 2018, the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable, or capricious. However, in protest or appeal proceedings when the complainant offers competent evidence that the market value of the property is different than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed."); *see Compiano*, 771 N.W.2d at 398 ("Evidence is competent

---

[2] The approved approaches to valuation include the "cost approach," "sales comparison approach," and "income approach." Iowa Dep't of Revenue, Iowa Real Property Appraisal Manual 1-2–1-3 (2020), https://tax.iowa.gov/sites/default/files/2020-01/Introduction.pdf (last visited 11/29/2021).

under the statute when it complies 'with the statutory scheme for property valuation for tax assessment purposes.'" (citation omitted)).

*B. Burden to Uphold the Assessment.* Associates spends considerable argument on the district court's initial ruling, which misstated the burden of proof. However, the court filed an amended ruling following Associates' Iowa Rule of Civil Procedure 1.904(2) motion. In any event, we recognize the burden rested with the Board to uphold the valuation assessed. *See* Iowa Code § 441.21(3)(b)(2). "[A]nd in our de novo review, that is where we place it." *Ross v. Bd. of Rev. of City of Iowa City*, 417 N.W.2d 462, 465 (Iowa 1988).

Associates contends the Board did not meet its burden because Kenney's appraisal "contains serious flaws and is not reliable." First, Associates argues Kenney selected poor comparable sales and made unsupported adjustments. Associates primarily focuses on its complaint that Kenney did not consider the sale of the Hotel in his comparable-sales analysis. While Kenney did not use the sale of the Hotel to Associates as a "comparable sale," it is clear Kenney did consider the sale in his analysis.

Kenney's appraisal report summarized the ownership and property history as follows:

> As of the valuation date of January 1, 2017, the property rights being appraised were held in the ownership of IA Lodging West Des Moines, LLC, an affiliate of Xenia Hotels & Resorts a publicly-traded Real Estate Investment Trust (REIT). The current owner received legal title to the [Hotel] by a deed dated April 10, 2010 and recorded in Deed Book 2010, Page 56 I 2. Consideration at that time was **$18,070,000** ($82,511 per room). This transfer was the purchase of the [Hotel] for continued hotel operation and use. We are not aware of any transfers of the [Hotel] within three years prior to the date of this valuation. To the best of our knowledge, the [Hotel] is not currently under agreement of sale, option, or listing to sell.

Sale of the [Hotel]

The [Hotel] did sell soon after the valuation date. A Lodging West Des Moines, LLC sold the [Hotel] to West Des Moines Hotel Associates, LLC (as to an undivided 62.73% interest), GDA Investments, LLC (as to an undivided 15.15% interest), and S.DUB124, LLC (as to an undivided 13.94% interest), all buyers c/o Kinseth Hotel Corporation of North Liberty, IA. This transfer was recorded on July 12, 2017 as recorded in Deed Book 2017, Page 13391. According to this deed and [declaration of value], the total consideration was **$13,874,000** ($63,352 per room), with an allocated consideration for personal property of $3,840,000 ($17,534 per room), and a remaining consideration for real property only of $10,034,000 ($45,817 per room).

According to the subject's Purchase And Sale Agreement dated April 27, 2017 and the First Amendment to Purchase and Sale Agreement dated May 31, 2017 (see Appendix C), the original agreed purchase price of $19,500,000 was reduced by the First Amendment to **$19,000,000** ($86,758 per room), including the land, improvements, personal property, licenses and permits, contract rights/intangible property and transferred FF&E cash, but excluding all Excluded Assets identified in Section 2.2. The purchase price shall be allocated among the Property, goodwill and franchise rights, Personal Property and Transferred FF&E Cash for federal income tax purposes under Section 1060 of the Internal Revenue Code by Consultant (defined as Ryan). According to Ryan's Acquisition Price Allocation—Valuation Summary Report (see Appendix D), the subject's tangible personal property was estimated at **$1,510,000,** or $6,895 per room (see Pages 4 of 19 and 10 of 19).

. . . .

According to the Final Settlement Statement ( see Appendix E), the total consideration was **$19,000,000** ( consistent with the First Amendment purchase price and represents $86,758 per room) with an FF&E cash account buyer credit of $1,250,000, which generates a net purchase price of $17,750,000 ($81,050 per room), and includes a mortgage loan amount **of $13,687,500** ($62,500 per room and a 72.0% Loan-to-Price ratio).

. . . .

[Hotel] Mortgage Appraisal

A mortgage loan appraisal supporting the mortgage provided was prepared by Nelsen Appraisal Associates, Inc. for West Bank, dated May 31, 2017, with a "Market Value As Is–Ongoing Concern" as of May 9, 2017 of **$19,600,000** ($89,498 per room), including allocations for "Real Estate–As Is" of $18,340,000 ($83,744 per room), "Intangible Property–As Is" of $700,000 ($3196 per room), and "Personal Property–As Is" of **$560,000 ($2557 per room)**. In addition, this appraisal provided "Market Value at Completion of Construction–Ongoing Concern" of $30,845,000 ($140,845 per

room) as of September 2019 and "Market Value As Renovated & Stabilized–Ongoing Concern" of $32,000,000 ($146,119 per room) as of September 2021.

Kenney's appraisal analyzes the Hotel's surrounding area and traffic and concludes the hotel is in an "excellent location." Also considered was the "unique zoning of this project," providing "a special value enhancement which was established through the efforts of and paid for by the developer, but adheres to the [Hotel] and benefits the present subject." Kenney determined the highest and best use of the [Hotel] is "for 'continued' full service hotel use utilizing the existing improvements."

Kenney's appraisal noted, "The property sold in July 2017, and the buyer (present property owner noted above) plans to undertake a $11.5 mil. Planned Improvement Program (PIP) renovation. This project was progressing in 2018, with approximately $2.9 mil. having been spent." Kenney testified that because this was the "subject property," he selected five other hotel sales for his comparable-sales analysis, all located in the Des Moines metropolitan area. Kenney explained his reasons for including each hotel in his valuation analysis and the bases for his adjustments. Based on Kenney's analysis, he arrived at a per-room value of $95,000, or a comparable-sales value of $20,800,000 for the Hotel.

Associates criticizes Kenney's failure to consider the declining performance of the Hotel or explain how the valuation could increase while performance decreased. The Board suggests an alternative explanation for the declining performance of the Hotel may be found in Associates' management decisions. Vaske's appraisal shows that after Associates acquired the property fees paid to hotel management have increased and money spent on marketing has been cut

in half. In addition, the Hotel requires $11 million of improvements under the PIP, but less than $3 million has been spent on the property. Notwithstanding Kinseth's testimony to the contrary, the FF&E was at or near the end of its life when the property was acquired in 2017 and the PIP—a condition of the Marriott franchise—required, among other things, replacement of beds and other "soft goods" in the guest rooms. All improvements were anticipated in be completed within twenty-four months. Associates does not explain how, despite the more than $2 million in expenditures on the Hotel, its value declined.

We observe there are flaws in each appraisal. Kenney's appraisal misallocates about $450,000 of the $2.9 million of capital expenditures as real estate improvements. Vaske's appraisal does not account for the effect of a PIP on one of his comparable sales (the downtown Marriott sale was subject to a $20 million PIP or $48,000 per room), which he acknowledged in his testimony could have a downward pressure on the sale price. Kenney allocated a thirty percent upward adjustment to the downtown Marriott sales, recognizing the impact the PIP had. Vaske's valuation of the Hotel did not include the expected $11 million PIP, which was to be completed within twenty-four months of the July 2017 sale.

Here, with respect to the income approach both Kenney and Vaske first determined a net operating income. Kenney found a stabilized income was $2,381,006; Vaske found a stabilized income of $2,287,445. However, the two appraisers utilized different capitalization rates.[3] Kenney used a capitalization rate

---

[3] As explained in Kenney's report,

> This net income stream is capitalized into value by using an overall rate based on competitive returns in the mortgage and equity markets. The conclusion regarding the expected equity return for the

of 11.80%, leading to value of $21,400,000; Vaske used a capitalization rate of 13.95%, leading to a value of $16,400,000.

Associates argues the Board erred in relying on national market data to determine the capitalization rate. Vaske testified that using national market data was an "apple-and-orange" comparison. However, Kinseth (the majority owner of the Hotel) and Marriott are national in scope. Kinseth owns or manages hotels in twelve states. And the market for large, full-service hotels such as the subject property is national. It is not unreasonable for Kenney to consider the national market in determining the capitalization rate.[4]

---

subject property and typical existing mortgage terms are combined in order to develop an overall capitalization rate (OAR).

[4] The Nelsen appraisal for the mortgagor explained [app1206]:

An additional survey from CBRE—1stHalf, 2016 provides capitalization data by metropolitan TIER. The Des Moines area would be probably in the lower end of the TIER III [e.g., San Diego, Minneapolis, Atlanta, Oakland, Philadelphia, Phoenix, Dallas/Fort Worth, San Jose, Houston] with capitalization rates ranging from 8.25% to 8.30% for a stabilized property.

Several investment attributes were considered while selecting an overall cap rate (Ro). Again, Ro is used to convert the subject's net operating income (NOI) into value. Investment attributes affect risk, which is major factor in the selection of an appropriate cap rate. When risk is low, a commensurate cap rate should be low, and vice versa.

All issues necessary to produce a value indication via the income approach were presented and explained. After careful consideration of all factors pertaining to and influencing this approach, the following formula capitalizes or converts net income into value.

$$\frac{NOI}{Ro} = Value = \frac{\$2,109,057}{10.75\%} = \$19,619,134$$

Indicated Market Value "As Is" as of May 9, 2017 Via Income Approach, say = $19,600,000

A central bone of contention here is the value of the FF&E. Kenney's appraisal used the mortgagor's $560,000 figure for the FF&E in 2017, and then considered the amount spent under the PIP:

> Present Use & Planned Renovation
> As of the valuation date, the [Hotel] was partially occupied, operated and utilized as a full service Marriott Hotel. According to Rodney Carmichael, Engineering Manager for the [Hotel], renovations in accordance with the Planned Improvement Plan (PIP) of $11,500,000 ($52,511 per room) were beginning on our prior inspection date of April 23, 2018, and were expected to be completed by mid-2020 (see complete PIP as "Exhibit H" of Purchase And Sale Agreement in Appendix C). In 2018, the PIP was underway with $2.9 mil. having been spent (see Appendix K). Our breakdown of renovation construction costs between real estate and furniture, fixtures and equipment (FF&E) are presented in the Improvements section of this report. Of the total figure, $2,347,719 was for real estate construction improvements, and only $550,860 was for Furniture, Fixtures & Equipment (FF&E).

Adding $550,860, Kenney valued the FF&E at $1.1 million. He testified his value assumed a ninety percent depreciation rate because the FF&E was getting close to the end of its useful life.

For his part, Vaske's appraisal addresses FF&E:

Based on discussions with representatives for the subject concerning the subject FF&E, the subject property had all new "case goods" (excluding beds) installed in the guest rooms in 2012. The conditions of the beds are assumed to be near the end of their economic life. The furniture, fixtures, and equipment within full service hotels with convention facilities, including full kitchen, bar, dining, and banquet/conference meeting space, typically has an economic life of 10 to 15 years. Considering the age and overall condition of the subject's FF&E (as of January 1, 2019), depreciation attributable to the FF&E is estimated at 60%. This indicates a depreciated cost for the FF&E of $2,628,000.

When asked how Associates arrived at the 2017 declared FF&E value of $3,840,000 million, Kinseth testified:

Well, I think—you know, if you just sit down and add up 219 rooms times the amount of FF&E and the 38 additional parlors, suites. Then you go down and say, Okay, there are ten offices, all with desks, all with computers, all with side chairs. Then you go into the restaurant and count the tables, the chairs, the linen, the banquet linen, the silverware, all the banquet table types, the AV equipment that is sitting on the wall and the carts and the portable bars and all of the furniture in the pre-function area, all of the furniture in the lobby, the vans, all the computer systems, all of the TVs in the rooms, all of the fitness equipment, you know, there is just a tremendous, tremendous amount of furniture and fixtures and personal property in there.

Kinseth agreed with counsel's statement "$3.84 million divided by 219 rooms is about $17,500 per room" and noted that to "outfit a new hotel" would cost between $25,000 and $35,000 per room. Kinseth testified Kenney's $1.1 million FF&E value was "laughable."

On our de novo review,[5] we agree with the district court when it observed:

One of the hotly contested facts in the trial was the value of the FF&E that is included in the purchase cost of the [Hotel]. [Associates] contends the FF&E was worth at least $3,840,000 when [Associates] purchased the [Hotel] in July 2017 for $19,000,000. Vaske found that the FF&E was $2,628,000 and Kenney valued the FF&E at $1,000,000 based partly upon the Ramsey appraisal which valued the FF&E at approximately $560,000 in 2017. Kenney did add approximately $500,000 in value to account for FF&E added since his previous valuation. The evidence suggests that the value of the FF&E is much closer to Kenney's value than that of Mr. Vaske or [Kinseth]. Therefore, Mr. Vaske's assigned value for FF&E is too high thus lowering the valuation of the [Hotel] which skewed his sales comparison approach to a lower value.

Vaske's appraisal overestimates the FF&E. Additionally, he fails to account for the value of the Marriott franchise. Kinseth testified Associates would not have purchased the Hotel if Marriott was unwilling to continue the franchise. He stated

---

[5] Also in the record is an "Acquisition Price Allocation Valuation Summary Report" prepared by Ryan, LLC., which considered the "tangible personal property" acquired in Associates' purchase had a value of $1,510,000.

the Marriott franchise was of "[t]remendous value." This is an appropriate consideration in the valuation process. *See Soifer*, 759 N.W.2d at 785 ("An assessor can 'consider intangibles in arriving at the actual value of the taxable property' provided the intangibles specified in section 441.21(2) are not considered." (citation omitted)). As the *Soifer* court noted:

> [V]aluing the Soifers' property as if it were not a viable McDonald's would be contrary to the principle that assessed property is valued based on its present use, including any functioning commercial enterprise on the property. In *Riso* [*v. Pottwattamie Board of Review*], this court held that an assessor is "entitled to consider the use of the [assessed] property as a going concern." 362 N.W.2d [513,] 517 [(Iowa 1985)]; *accord Maytag Co.* [*v. Partridge*], 210 N.W.2d [584,] 590 [(Iowa 1973)]; *Lake City Elec. Light Co.* [*v. McCrary*], 110 N.W. [19,] 20 [(Iowa 1906)]. As we stated in *Maytag,* "[w]hen an assessor considers the use being made of property, he is merely following the rule that he must consider conditions as they are." 210 N.W.2d at 590 (rejecting an expert's analysis that valued machinery in use in the Maytag factory based on the used machinery market price).

759 N.W.2d at 788.

Having considered the record evidence, testimony of the witnesses, and the respective drawbacks of each appraisal, we conclude the Board has met its burden to prove its valuation of the Hotel as of January 1, 2019, for $18,434,100 is not excessive. We therefore affirm.

**AFFIRMED.**